IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 18, 2003

**STATE OF TENNESSEE v. FREDERICK T. POINTER**

**Appeal from the Circuit Court for Williamson County**
**No. I-802-303     Donald P. Harris, Judge**

---

**No. M2003-00893-CCA-R3-CD - Filed March 26, 2004**

---

The defendant pled guilty in the Williamson County Circuit Court to sexual battery by an authority figure and incest, Class C felonies.  After a sentencing hearing, the trial court sentenced him as a Range I, standard offender to concurrent sentences of four years for each conviction to be served as eleven months, twenty-nine days at seventy-five percent in the county jail and the remainder on supervised probation.  The defendant appeals, claiming that the trial court erred by denying his request for full probation.  We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which JERRY L. SMITH and ROBERT W. WEDEMEYER, JJ., joined.

John H. Henderson, District Public Defender; and Eugene J. Honea, Assistant Public Defender, for the appellant, Frederick T. Pointer.

Paul G. Summers, Attorney General and Reporter; Kathy D. Aslinger, Assistant Attorney General; Ronald L. Davis, District Attorney General; and Sharon E. Guffee, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This case relates to the defendant's sexually abusing his thirteen-year-old stepdaughter.  At the guilty plea hearing, the state gave the following factual account of the crimes:  In February 2002, the defendant began touching the victim underneath her clothes and between her legs.  Occasionally, the defendant would put his fingers inside her vagina.  At some point, the defendant stopped abusing the victim and told her he was sorry.  However, in May 2002, he performed oral sex on the victim at least twice.  The victim told a teacher at school about the abuse, and someone at the school contacted the Department of Children's Services (DCS).  When the defendant learned that the victim had revealed the abuse, he immediately went to the Franklin City Police Department and gave a full confession.

At the sentencing hearing, Eric Fogel, a clinical therapist at the Rape and Sexual Abuse Center, testified that he counseled the victim once a week from June to October 2002. He said that in July 2002, the victim threatened to commit suicide, was hospitalized at Vanderbilt, and was placed on medication. He said that the victim had been diagnosed with bipolar tendencies and that she also suffered from Post Traumatic Stress Disorder and a mood disorder. He said that the victim talked with him about the abuse but that she did not talk about it in detail. He said the victim was confused and angry and expressed shame and guilt over the abuse. He said she also was having problems in school. He said sexual abuse by family members was more damaging than abuse by nonfamily members. He said the victim missed the defendant, which was not surprising because the defendant had acted as the victim's father for many years. He said he stopped meeting with the victim when she went to live with her biological father. He said that the family wanted to be reunited but that it would need continued therapy in order for that to happen. He said that children usually suffered long-term effects from this type of abuse and that the victim would need therapy for a long time. He acknowledged that the sexual abuse would have a great psychological impact on the victim.

On cross-examination, Mr. Fogel testified that the victim had expressed anger toward her mother and would not obey rules at home or at school. He said he did not know if these problems existed before the abuse started. He said the victim also was sexually abused by her biological father when she was four or five years old. He said the victim's reaction to the defendant's sexual abuse was not significantly different from other children's reactions to sexual abuse. He said that the victim wanted the defendant to be punished but that sending the defendant to prison would be hard on her.

Detective Becky Johnson of the Franklin City Police Department testified that in May 2002, she received a facsimile referral from the DCS and a telephone call from a DCS employee regarding the victim's allegations. She said that she contacted Lisa Pointer, the victim's mother, and that Mrs. Pointer agreed to bring the victim to the police department for an interview. She said that while she was waiting for Mrs. Pointer and the victim to arrive, she was informed that the defendant was at the police department. She said she met with the defendant in an interview room and asked why he was there. She said the defendant told her that he had molested the victim. She said that she read the defendant his rights and that he told her the following about the crimes: The defendant would wrestle on the floor with the victim, her younger brother, and the defendant's son. Sometimes, the defendant would touch the victim accidentally and these touchings resulted in feelings that led to the abuse. The defendant began sexually abusing the victim in January or February 2002. He was sorry for the abuse and had tried not to abuse the victim again. However, the abuse continued on and off for five months. The defendant performed oral sex on the victim at least twice and digitally penetrated her vagina. The most recent episode of abuse had occurred the weekend before the defendant's police interview. Detective Johnson said the victim's account of the abuse was very similar to the defendant's account. On cross-examination, she testified that the defendant was cooperative and that she thought he was being truthful. She said that although most perpetrators tried to hide their crimes, that was not true in this case.

Lisa Pointer, the victim's mother, testified that she and the defendant had been married almost seven years at the time of the hearing. She said she learned about the abuse when the victim telephoned her at work and told her about it. She said she did not believe the victim at first because the victim was "commonly trying to make allegations about different things." She said that she talked to the defendant and that he admitted the abuse. She said the defendant told her he was going to turn himself in to the police. She said the defendant's sexually abusing the victim was out of character for the defendant and did not think it would happen again. She said that the victim had been sexually abused by the victim's biological father when the victim was six years old and that the victim would talk about that abuse as if it was happening currently. She said that the victim got counseling for the abuse by her biological father but that he was never charged with a crime. She said that she and the defendant were employed, that she would like for the family to be reunited, and that everyone in the family would get counseling. She said the victim had gone to live with her biological father because she was "totally defiant" and had gotten expelled from school.

On cross-examination, Mrs. Pointer acknowledged that the defendant went to the police after the victim had disclosed the abuse. She said that she did not blame the victim for the abuse and agreed that the victim would need long-term therapy. She said that the defendant currently lived with the family, that the victim came to visit every other weekend, and that the defendant left the home when the victim was there.

Larry Watkins testified that he has a master's degree in guidance and counseling and began counseling the defendant in May 2002. He said that at the time of the hearing, he was still counseling the defendant and had met with the defendant for about twenty-two hours. He said that the defendant had made tremendous progress and that Lisa Pointer had attended many of the defendant's counseling sessions. He said he was helping to reprogram the defendant's mind and helping the defendant learn how to control certain issues. He said that the defendant had little to no risk of reoffending, that the defendant needed long-term therapy, and that the defendant was genuinely remorseful. On cross-examination, he testified that he had seen the defendant's psychosexual evaluation report, which states that the defendant has a low risk of reoffending, and that he believed the defendant needed sexual offender counseling. He said that he was not a state-approved psychologist and that he had no specific training for counseling sexual offenders.

Allen Clark testified that he is the pastor at Brentwood Church of the Nazarene and that the defendant and Lisa Pointer attended his church. He said he had not known the defendant very long but was shocked when he heard about the sexual abuse. He acknowledged that the abuse was out of character for the defendant, that the defendant was a good person, and that the defendant had expressed genuine remorse for the crimes.

The defendant testified that he knew what he did to the victim was wrong and that he turned himself in to the police because he did not know what else to do. He said that he had tried to achieve a morally upright family and that he was devastated by what he had done. He said that the victim had had faith in him and that he let her down. He said that he believed the abuse took place from April to May 2002, not January to May, but that he could have the dates wrong. He said that he tried

to make an appointment for a psychosexual evaluation before he was charged with the crimes and that he planned to continue receiving therapy.

On cross-examination, the defendant testified that he used marijuana from 1981 to 1986. He said that in 1983, he was charged with assault and battery for pulling down a woman's shorts. He said that he pulled down the shorts as a joke and apologized to the woman but that she went to the police. He said that he pled guilty, received a sentence of one year on probation, and successfully completed his sentence. He said the longest he had worked for one employer was two years. He said that he had been laid off repeatedly and that he also had been going to school full time. He acknowledged being fired from Nationlink for misusing electronic mail and said that he currently was working for CompUSA. He also acknowledged that he went to the police department and confessed to abusing the victim after he learned that she had revealed the abuse to her mother. He said the abuse occurred at night while the victim was in bed. He said that he would go into the victim's bedroom to talk to her, that they would wrestle, and that she would pull him back when he tried to leave. He said that he would tickle the victim's hands and legs and that the abuse progressed from there. He said that he had never touched the other children in the family and that he knew the victim's biological father had sexually abused her.

According to the defendant's presentence report, the then thirty-eight-year-old defendant graduated from high school and attended college classes. He reported that his physical heath was good and that he suffered from arthritis in his right hand and back problems. The defendant described his mental health as fair and said that he was "working through some addictive behavior problems." The defendant stated that he used marijuana from 1981 to 1986 but denied currently using the drug. The defendant also stated that he began drinking alcohol when he was sixteen years old and that his drinking increased until 1994. He said that at the time of the report, he drank four or five drinks per month. The report shows that the defendant attended family counseling in 1993 and from June to July 2001.

In a psychosexual evaluation that is attached to the presentence report, the defendant admitted being attracted to females thirteen years old and younger. The evaluation provides that although the defendant admitted to abusing the victim sexually, "his [rationale] and description of the offenses suggest that he places some blame on the victim." According to the report, the defendant has a low risk of recidivism.

The trial court stated that it had considered the testimony, presentence report, psychosexual report, enhancement and mitigating factors, and the statutory sentencing procedures. It noted that the defendant was presumed to be a favorable candidate for alternative sentencing and that the range of punishment for a Range I offender convicted of a Class C felony is three to six years. See T.C.A. §§ 40-35-102(6), -112(a)(3). The trial court determined that enhancement factor (2), that the defendant "has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range," applied to his sentences. See T.C.A. § 40-35-114(2). The trial court stated that it also had considered mitigating factor (1), that the defendant's "criminal conduct neither caused nor threatened serious bodily injury," but refused to give that factor any

weight because of the sexual abuse's effects on the victim. It sentenced the defendant to four years for each conviction to run concurrently. The trial court noted that although the defendant was a "pretty good" candidate for alternative sentencing, a sentence of split confinement was more appropriate in this case. The trial court determined that the defendant could have been charged and convicted of rape and that in order to avoid depreciating the seriousness of the offenses, the defendant should serve eleven months, twenty-nine days at seventy-five percent in jail.

The defendant appeals, claiming that the trial court improperly refused to give weight to mitigating factor (1) and improperly refused to apply mitigating factor (11), that the defendant, "although guilty of the crime, committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated the criminal conduct," and factor (13), that the defendant turned himself in to police and cooperated with authorities. See T.C.A. § 40-35-113(11), (13). In addition, he contends that the trial court incorrectly determined that he could have been convicted of rape and, therefore, that full probation was not appropriate in this case in order to avoid depreciating the seriousness of the offenses. He claims that as a result of the trial court's errors, this court should review his sentences de novo with no presumption of correctness and sentence him to full probation. The state claims that the trial court properly sentenced the defendant. We agree with the state.

When a defendant appeals the manner of service of a sentence imposed by the trial court, this court conducts a de novo review of the record with a presumption that the trial court's determinations are correct. T.C.A. § 40-35-401(d). However, the presumption of correctness is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The burden is on the appealing party to show that the sentence is improper. T.C.A. § 40-35-401(d), Sentencing Commission Comments. This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

When determining if incarceration is appropriate, a trial court should consider whether (1) confinement is needed to protect society by restraining a defendant who has a long history of criminal conduct, (2) confinement is needed to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to people likely to commit similar offenses, or (3) less restrictive measures than confinement have frequently or recently been applied unsuccessfully to the defendant. Ashby, 823 S.W.2d at 169 (citing T.C.A. § 40-35-103(1)(A)-(C)). The trial court may also consider the mitigating and enhancing factors set forth in T.C.A. §§ 40-35-113 and -114. T.C.A. § 40-35-210(b)(5); State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996). In addition, a trial court should consider a defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. T.C.A. § 40-35-103(5); Boston, 938 S.W.2d at 438. In conducting a de novo review, we must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence

report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf, and (7) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-102, -103, -210; see Ashby, 823 S.W.2d at 168.

Initially, we note that the trial court's determinations as to the sentences are entitled to a presumption of correctness because the record reflects that in denying full probation, the trial court considered the relevant facts, circumstances, and sentencing principles. Regarding the defendant's claim that the trial court should have given weight to mitigating factor (1), as long as the trial court followed the sentencing purposes and principles, the weight to be afforded an existing factor is left to the trial court's discretion. As to the defendant's claim that the trial court should have applied mitigating factors (11) and (13), we hold that even if those factors were applicable in this case, the trial court was justified in denying the defendant's request for full probation. We note that the trial court could have applied enhancement factor (16), that the defendant abused a position of private trust, to his sentences. See T.C.A. § 40-35-114(16). Moreover, we agree with the trial court's denying an alternative sentence based upon the need to avoid depreciating the seriousness of the offense. In order for this provision to apply, the circumstances of the offense must be "especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree." State v. Travis, 622 S.W.2d 529, 534 (Tenn. 1981); State v. Hartley, 818 S.W.2d 370, 374-75 (Tenn. Crim. App. 1991). In this case, the defendant digitally penetrated and performed oral sex on his thirteen-year-old stepdaughter over a period of five months. He also abused her while knowing that she had been sexually abused by her biological father as a young child. We conclude that the defendant has not overcome the presumed correctness of his sentences.

Based upon the foregoing and the record as a whole, we affirm the judgments of the trial court.

_____
JOSEPH M. TIPTON, JUDGE